EDMUND FITZGERALD vs. THE TRUSTEES OF THE FIRST PRESBY-
TERIAN CHURCH OF THE CITY OF PORT HURON.

An assignee of a mechanic's lien, under ch. 154, *C. L.*, as amended by *S. L.* of 1869, pp. 219 to
223, cannot, by a petition in his own name, enforce the lien given by the statute.

The right of petition to enforce the lien is given to the contractor or sub-contractor only.

The law creates a new remedy, is special in its character, must be strictly construed and as
strictly pursued in all respects.

The lien is personal to the contractor or sub-contractor, and is not assignable.

The constitutionality of the law in giving special powers to a Judge at Chambers is a subject
of doubt.

*St. Clair Circuit, in Chancery, July,* 1870.

*John Atkinson and A. E. Chadwick*, Solicitors for Complain-
ant.

*O. B. J. Atkinson and B. C. Farrand*, for Defendant.

This case was commenced in vacation, proofs taken and
argument had at Chambers.

MITCHELL, J.—This is a special proceeding to enforce a lien
under *C. L. ch.* 154, as amended by *Act* 127, *S. L.* 1869, *p. p.*
219 *to* 223.

This statute as amended, gives a special lien upon the land
on which the building or wharf may be, not exceeding a given
quantity of land, to every person who shall, by contract, express
or implied with the owner, part owner or lessee of any piece
of land, furnish labor or materials for constructing or repairing
any building, wharf, &c., on such land.

Such lien will not attach unless the contractor or some one
in his behalf makes and files a certificate containing a copy of
the contract, or if not written a statement of its terms and a
description of the land on which the lien is claimed, &c., which
shall be recorded by the register of deeds in the record of
mortgages; nor shall such lien attach unless notice of the filing
be given to the owner, part owner or lessee aforesaid.

Another section provides that the lien shall cease at the end
of six months from the time when, by the terms of the contract

the money to be paid is due thereon, unless proceedings to en-
force the lien shall have been sooner commenced.

When by the terms of such contract, any sum shall remain
unpaid for sixty days after the same is payable, the contractor
or sub-contractor may file his petition in the Circuit Court in
Chancery, in the county in which the land may lie, either in
term or in vacation, for the enforcement of such lien, and the
Court or Judge may make such order for appearance, publica-
tion and answer as may be proper under the circumstances.

After providing what the petition shall contain, the statute
provides that " the said Court or Judge thereof shall proceed
to hear the matter in a summary manner, either in term or in
vacation as shall be directed by said Court or Judge, in each
case, from time to time ; and every act, matter or thing, which
this chapter provides shall be done by the Court, may be done
by the Judge thereof in term or in vacation."

After providing for sale or leasing, on the decree, the act
provides that judgment may be entered and execution issued
for any balance unsatisfied by the sale or lease, the same as upon
other decrees of the Court.

It will be seen that this act confers unusual and extraordi-
nary powers, not only upon the Circuit Court in Chancery, but
upon the Circuit Judge at Chambers.   As to the constitution-
ality of which, there may well be serious doubts, in view of the
constitutional provisions limiting judicial powers to certain
named tribunals.

Leaving such possible doubts to be determined by the Su-
preme Court, where such questions can alone be properly deter-
mined, this case is to be considered and determined upon other
questions that are in my opinion less doubtful.

By the petition, it is stated that the contract was between
Samuel A. Marshall, builder, of the one part, and Robert Wil-
son and others, trustees of the First Presbyterian Church of
the city of Port Huron, of the other part.   That it was Mar-
shall who contracted with the individuals named trustees, &c.,
and the petition does not state (nor does it anywhere appear)
that the complainant was a contractor or sub-contractor, but
he is claimed to have endorsed paper and become surety for the

contractor, and is an assignee of the contract. The petition also states that it was by the parties, understood that the building spoken of was to be a church for the First Presbyterian Society, &c., to be erected on the lots described in the petition. That said trustees are the owners of said lots and that Marshall in pursuance of the contract has erected a building on said lots and furnished materials therefor at an expense of over $4,000. That one McDonald was superintendent and the architect employed by the trustees, that the building was erected as he directed, and that on the 2d of November, 1869, the architect gave Marhsall a certificate that he was then entitled to $766 on account of the contract for building the church, and that on the 6th of November, he gave a similar certificate that Marshall was entitled to the further sum of $433 on the same account, and that as appeared by both said certificates, the trustees of said church were then indebted to Marshall in the sum of $1,199. That Marshall then had a lien upon the church and lots for that amount which was then due to him. That Marshall, being embarrassed in procuring material, &c., applied to complainant who became his surety and endorsed for him to an amount of over $1,400, upon Marshall's making an assignment to him of the amount due on the contract as follows:

" For a valuable consideration to me paid by Edmund Fitzgerald, I hereby assign the above contract and all payments and claims due thereon to him, his heirs and assigns.

      [Signed]               S. A. MARSHALL."
Dated November 6, 1869.

That said arrangement was made with the knowledge of the trustees, and that petitioner has frequently applied for payment, which has been neglected and refused ; that Marshall delivered to the petitioner the possession of the building, and he has since then retained full possession, and still holds the same. subject to the right of Marshall to go on and complete his job under said contract; that April 19th, 1870, Marshall made and filed with the register of deeds his certificate, setting forth a copy of the contract, in which he stated that the trustees are the owners of the lots on which the building is erected, describing them ;

that he had erected a building thereon; that there was then his due $1,199 over and above all credits, and that $2,900 was yet to become due, and that "I claim a lien upon said lots and the appurtenances for the sums aforesaid;" that this certificate was sworn to by Marshall, and was filed and recorded on the same day—April 19, 1870; that on the same day Marshal served upon the trustees a notice that he had filed the said certificate. The petition then alleges that by virtue of said contract, assignment, certificate and notice, the petitioner has a lien upon said lots and appurtenances for the sum of $1,199, and prays for proper order for appearance and the sale of the lots, under the statute.

The contract, as set forth and proved, is "between S. A. Marshall, builder, on the one part, and Robert Wilson, Peter B. Wright, Edward Cowan, Daniel Robinson and Alexander Stewart, Trustees of the First United Presbyterian Church of the City of Port Huron, on the other part." By its terms, Marshall agrees to and with said Robert Wilson and others, (naming them, but not with addition of "as trustees," &c.,) to erect the building, furnish materials, &c., for the sum of $5,500, in consideration whereof said Robert Wilson and others (without addition of trustees or any other description) promise and agee to pay to said Marshall on the certificate of —— ——, the architect, &c. It is signed by Marshal, and by Wilson and the others, without any addition of "trustees" or other description, but by their individual signatures, without addition.

By the proofs, it appears that the petitioner, after procuring the assignment, went to the trustees and asked their assent to the assignment, and that he be substituted in place of Marshall. This was refused, or not agreed to, and the assent written on the contract to that effect was not signed. While the trustees knew that Marshall had signed the assignment to Fitzgerald, they did not give any direct assent to the assignment, but treated it as if their written assent was necessary to perfect it, and demanded security that Marshall would go and complete the contract on his part, and a bond or paper was drawn for that purpose, but was not executed by any one. Marshall, in

his testimony, says the bond was not executed because the trustees would not assent to the assignment.

After the assignment was signed, Marshall went on with the work the same as before, until, for want of pay or means, he was compelled to stop. He testifies that he did so, and continued the work for Fitzgerald, but there was no apparent change in the manner or direction of the work, and the trustees paid Marshall and those who furnished him materials, various sums, entirely ignoring Fitzgerald's claims.

In the view I take of this case, it is unnecessary further to review the proofs, which are mainly as to the amount done on the job, payments, and balance claimed.

The statute under which this proceeding is commenced is a special and peculiar one, and must be strictly construed and as strictly pursued. It in distinct terms gives the lien to the contractor or sub-contractor, and makes it personal to them, and to none other. The contractor or sub-contractor are alone authorized to file a petition, and this right cannot be extended to an assignee. There are no words in the statute in any way implying that such lien may be held or enforced by an assignee, and in this case it seems to have been so understood when Marshall made his certificate of lien five months ago after the assignment to Fitzgerald, and only a few days before the petition was filed. In that certificate he states that there is then due to him the $1,199 previously assigned to Fitzgerald, and says: "I claim a lien upon said lots and appurtenances for the sums afore said." This claim was not, on its face, for the benefit of Fitzgerald, but was personal to Marshall. Fitzgerald files no certificate of claim of lien, but depends on Marshall's claim. The claim made by Marshall cannot inure to Fitzgerald's benefit.

I do not look upon this proceeding as demanding or authorizing the exercise of the ordinary chancery powers of Courts of equity, but however much I might wish it otherwise, I feel myself limited by the terms of a statute creating a special tribunal with special powers, or giving to an existing tribunal special powers to enforce a lien that is created by the same

statute, and which in effect denies the defendants the right of trial by jury.

In view of the whole case it is ordered and decreed that the petition be dismissed with costs, but without prejudice to any other legal or equitable claim or remedy the petitioner may or might have if these proceedings had not been taken.